# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

MARYFRANCES A. COON,

      **Plaintiff,**

v.                                    **Civil Action No. 3:18cv108**

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, *et al.*,

      **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Federal National Mortgage Association's ("FNMA") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 3.) Plaintiff Maryfrances A. Coon responded, and FNMA replied. (ECF Nos. 6, 7.) Accordingly, the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[2] For the reasons that follow, the Court will grant in part FNMA's Motion to Dismiss.

---

[1] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[2] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332. Coon is a citizen of Virginia and FNMA is a citizen of the District of Columbia. As discussed below, the Court will dismiss Defendant Equity Trustees, LLC as fraudulently joined and as a nominal party. The Complaint alleges damages exceeding $75,000.

## I. Factual and Procedural Background

### A. Procedural History

On June 8, 2017, Coon filed her Complaint against FNMA and Defendant Equity

Trustees, LLC ("Equity") in the Circuit Court for Amelia County, Virginia. Coon served FNMA

with summons and a copy of the Complaint on January 17, 2018, and FNMA filed a demurrer on

February 6, 2018. Nothing in the record indicates that Equity was ever served. On February 16,

2018, FNMA removed the action to this Court under 28 U.S.C. § 1441[3] on the basis of diversity

jurisdiction. Coon did not seek remand. On February 23, 2018, FNMA timely filed the Motion

to Dismiss.[4] Coon responded, and FNMA replied.

### B. Summary of Allegations in the Complaint[5]

This case centers around FNMA's alleged wrongful foreclosure of Coon's home (the

"home"). Some time before February 9, 2008, Coon inherited the home from her parents, free of

any outstanding mortgage lien. On February 9, 2008, Coon conveyed ownership of the home to

her then-husband, Stanley Coon ("Stanley"). The same day, Stanley entered into a mortgage

---

[3] Section 1441 provides, in relevant part:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

[4] Under Federal Rule of Civil Procedure 81(c)(2)(C), although "repleading after removal is unnecessary unless the Court orders it[, a] defendant who did not answer before removal" must do so within, as relevant here, "7 days after the notice of removal is filed." Fed. R. Civ. P. 81(c)(2)(C).

[5] For purposes of the Motion to Dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Coon. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

loan with Advanced Financial Services, Inc. ("AFNI"), evidenced by a promissory note (the "Note") and secured by a deed of trust (the "Deed of Trust").[6] The Deed of Trust identified Stanley as the "Borrower."[7] (Deed of Trust 2, ECF No. 4-2 ("'Borrower' is Stanley G[.] Coon.").) Stanley passed away on July 11, 2011. At some point, according to Coon, AFNI assigned the Note to FNMA, which "claimed status as the owner of the [N]ote" and retained Seterus, Inc. ("Seterus"), to service the loan. (Compl. ¶¶ 10, 11.)

The Deed of Trust contains two provisions relevant to Coon's claims. First, the Deed of Trust defines applicable law as "all controlling applicable federal, state[,] and local statutes, regulations, ordinances[,] and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions" (the "Applicable Law Definition"). (Deed of Trust 3.) Second, paragraph twenty-two of the Deed of Trust governs acceleration and foreclosure of the loan. That paragraph provides, in relevant part:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in [the Deed of Trust] . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and[,] (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by [the Deed of Trust] and sale of the Property. . . . If the default is not cured on or

---

[6] FNMA attached copies of the Note and the Deed of Trust to its memorandum in support of the Motion to Dismiss. (ECF Nos. 4-1, 4-2.) Because these documents are "central to [Coon]'s claim[s], . . . sufficiently referred to in the complaint," and neither party disputes their authenticity, the Court will consider these documents in ruling on the Motion to Dismiss. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted). Of course, "in the event of conflict between the bare allegations of the complaint and any attached exhibit . . . , the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

[7] Coon alleges that the Deed of Trust "identified 'Borrower' as both of the Coons." (Compl. ¶ 8, ECF No. 1-1.) Although the first page of the Deed of Trust says: "This Deed of Trust is given by Stanley G[.] Coon & Maryfrances Coon," and both Stanley and Coon signed the document, (Deed of Trust 1, 14), the Deed of Trust unambiguously identifies only Stanley as the Borrower. Given this conflict between the "bare allegations of the complaint and [the] attached exhibit . . . , the exhibit prevails." *Fayetteville Inv'rs*, 936 F.2d at 1465 (4th Cir. 1991).

3

before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by [the Deed of Trust] without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. . . .

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. . . . Lender or its designee may purchase the Property at any sale.

(Deed of Trust 13 (the "Foreclosure Clause").)

At an unidentified time in 2015, Seterus sent "correspondence" addressed to the Estate of Stanley Coon, "promis[ing] a loan modification based on qualification for the same and based on acceptance by telephone by a specified date and timely payment of three trial payments." (Compl. ¶ 13.) Coon alleges that she called Seterus within the stated deadline, identified herself as Stanley's widow, "accepted the trial payment and loan modification offer," and timely made the three trial payments. (*Id.* ¶¶ 14, 15.) However, some time in 2016, Seterus "sent back the third payment," informing Coon that she must assume the loan. (*Id.* ¶ 17.)

In mid-January 2016, Seterus sent "a 30-day cure notice" to the Estate of Stanley Coon.[8] (*Id.* ¶ 18.) Coon contacted Seterus, and Seterus told Coon "she was required to complete certain paperwork towards assumption of the loan." (*Id.* ¶ 19.) Seterus also told Coon "to ignore the 30-day cure notice and not to make any further payments until the application process involving the paperwork for assumption of the loan was completed." (*Id.*) Coon alleges that Seterus repeatedly told her she had "sent everything necessary for assumption of the loan," and then "repeatedly told her that Seterus needed more." (*Id.* ¶ 14.) According to Coon, this happened at least three times.

---

[8] Coon refers throughout the Complaint to a "cure notice," but never describes the contents—or lack thereof—of this "cure notice." Coon never explicitly asserts that the loan was in default, but her receipt of a "cure notice" and a lack of factual allegations indicating she disputed the propriety of the "cure notice" support the reasonable inference that the loan was in default at the time Seterus sent the notice.

4

At some point, Seterus appointed Equity as "substitute trustees." (*Id.* ¶ 16.) Thereafter, "Seterus, on behalf of [FNMA], instructed Equity . . . to foreclose on the home." (*Id.* ¶ 25.) Equity advertised the home for a foreclosure sale to occur on March 29, 2017.

Coon learned of the foreclosure sale "about a week before" the scheduled sale, and called Seterus to ask why the home was scheduled for foreclosure. (*Id.* ¶¶ 26, 27.) Seterus allegedly told Coon that it needed additional paperwork, and that Coon must be "appointed as administrator on [sic]Stanley Coon's estate." (*Id.* ¶¶ 27, 29.) Coon sent Seterus "proof of her appointment as administrator" of Stanley's estate[9] on March 28, 2017, the day before the scheduled foreclosure. (*Id.* ¶ 31.) Seterus nevertheless "instructed Equity . . . to proceed with the sale." (*Id.* ¶ 32.) Equity conducted a foreclosure sale, at which FNMA made the high bid of $166,858.56, even though the home was assessed for tax purposes at $212,400.00. Coon contends that Equity "acted on its own and as agent for [FNMA]" when it conducted the foreclosure sale. (*Id.* ¶ 34.)

Seemingly some time thereafter, FNMA "advertised an Internet Auction to sell the home," but at the time Coon filed her Complaint, the auction had not taken place. (*Id.* ¶ 35.) Nothing in the record indicates that the auction has since occurred. FNMA also, at some point, "posted a notice on the door of the home asserting that Coon and any other occupants had 30 days to vacate the home." (*Id.* ¶ 36.)

The Complaint alleges three counts, each arising out of FNMA's foreclosure of the home.

**Count One:** **"Suit for Rescission of Foreclosure and Trustee's Deed and for Damages on Grounds of Dual Foreclosure."** Coon alleges that FNMA breached the Foreclosure Clause of the Deed of Trust because the foreclosure violated "the prohibition against dual track foreclosure" under 12 C.F.R. § 1024.41 and HAMP Supplemental

---

[9] Nothing in the Complaint indicates a reason for the six-year lapse in time between Stanley's death and Seterus's request that Coon submit paperwork establishing herself as administrator of Stanley's estate.

Directive No. 09-01 (the "Breach of the Applicable Law Provision Claim"). (Compl. ¶¶ 13–42.)

**Count Two:** **"Suit for Rescission of Foreclosure and Trustee's Deed and for Damages on Grounds of Breach of the Cure-Notice Requirement of Paragraph 22 of the Deed of Trust.[]"** Coon asserts that Seterus's statement that she should "ignore the cure notice sent in January 2016" constituted FNMA's withdrawal of that cure notice, and therefore that "no holder of the note ever sent a proper cure notice in compliance with paragraph 22," rendering FNMA's foreclosure wrongful (the "Breach of the Notice Provision Claim"). (Compl. ¶¶ 43–47.)

**Count Three:** **"Breach of Implied Covenant of Good Faith and Fair Dealing: Suit for Damages[.]"** Coon avers that the Deed of Trust contained an implied covenant "obligating the holder . . . to treat Coon with good faith and fair dealing," and that FNMA's actions in foreclosing on Coon's home "constituted breach of such covenant" (the "Breach of the Implied Covenant Claim"). (Compl. ¶¶ 48–54.)

In Counts One and Two, Coon asserts that she suffered damages in that she was deprived of record title and quiet enjoyment of the home, and lost equity in the home and interest on that equity. Coon seeks rescission of the foreclosure sale, or some remedy equivalent to rescission, and $100,000 in compensatory damages.

## II. The Court Will Dismiss Equity Trustees as Fraudulently Joined and as a Nominal Party

Before reaching the merits of the Motion to Dismiss, the Court must examine the basis for its jurisdiction over this action. In its Notice of Removal, FNMA asserted that the Court had jurisdiction over the case pursuant to 28 U.S.C. § 1332 based on complete diversity of the parties and an amount in controversy over $75,000. FNMA contended that, although, "upon information and belief, Equity is a limited liability company organized under Virginia law[,] Equity's citizenship should be disregarded in determining diversity jurisdiction[] because it has been fraudulently joined or is a nominal party." (Not. Removal 3, ECF No. 1.) Although Coon did not move to remand the case to state court, this Court has an independent obligation to ensure

6

its jurisdiction. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing Fed. R. Civ. P. 12(b)(1)) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . . ."). Because no possibility exists that Coon could establish a cause of action against Equity, and Equity has no stake in the outcome of this case, the Court will dismiss Equity as fraudulently joined and as a nominal party.

## A.     The Fraudulent Joinder Doctrine

The fraudulent joinder doctrine operates as an exception to the complete diversity requirement, permitting a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, and dismiss the nondiverse defendants, thereby retaining jurisdiction. *Abraham v. Cracker Barrel Old Country Store, Inc.*, Civil Action No. 3:11cv182, 2011 WL 1790168, at *1 (E.D. Va. May 9, 2011) (citing *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). "To show fraudulent joinder, the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (alteration in original) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.* "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." *Id.* The Court is not bound by the allegations in the pleadings, but can consider the entire record. *Mayes*, 198 F.3d at 464.

7

## B. The Nominal Party Doctrine

The doctrine of nominal parties is "related[,] but not identical" to the doctrine of fraudulent joinder. *Payne v. Bank of America, N.A.*, No. 3:09cv80, 2010 WL 546770, at *4 (W.D. Va. Feb. 11, 2010). A "nominal party" is one that "ha[s] no immediately apparent stake in the litigation." *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260 (4th Cir. 2014). "In other words, the key inquiry is whether the suit can be resolved without affecting the . . . nominal defendant in any reasonably foreseeable way." *Id.* Determining nominal party status "is a practical inquiry, focused on the particular facts and circumstances of a case." *Id.*

## C. Coon Cannot Maintain a Cause of Action Against Equity and Equity Has No Stake in the Litigation

In this case, even resolving all issues of law and fact in Coon's favor, no possibility exists that Coon could establish a cause of action against Equity, and Equity has no stake in the outcome of the litigation. *Hartley*, 187 F.3d at 424. FNMA has satisfied the heavy burden required to establish fraudulent joinder, and the Court will dismiss Equity as fraudulently joined and a nominal party.

Courts in this district have held that "the status of a substitute trustee [as properly joined or not] hinges on the nature of the actions allegedly taken by the trustee, if any, and the type of relief sought against the trustee." *Sherman v. Litton Loan Servicing, L.P.*, 796 F. Supp. 2d 753, 760 (E.D. Va. 2011) (collecting cases); *see also Bennett v. Bank of America, N.A.*, No. 3:12cv34, 2012 WL 1354546, at *3 (Apr. 18, 2012) (citing *Sherman*, 796 F. Supp. 2d at 760).

In this action, Coon alleges no substantive actions that Equity took and seeks no relief from Equity.[10] An examination of the Complaint, even viewed favorably, shows that none of the

_____

[10] Notably, Coon does not even identify Equity as a "party" in her Complaint. (*See* Compl. ¶¶ 1, 2 (naming only Coon and FNMA as parties).)

actions Coon contends Equity took could establish a cause of action against Equity. This

mandates a finding of fraudulent joinder.

Coon makes only the following allegations involving Equity:

(1)     "Seterus, on behalf of [FNMA], executed a document which removed the
        original trustees and appointed [Equity] as substitute trustees." (Compl.
        ¶ 16.)

(2)     "Seterus, on behalf of [FNMA], instructed [Equity] to foreclose on the
        home. [Equity] advertised a foreclosure of the home for March 29, 2017."
        (Compl. ¶ 25.)

(3)     "Seterus instructed [Equity] to proceed with the sale. As a result, on
        March 29, 2017, [Equity] conducted a purported foreclosure sale . . . ."
        (Compl. ¶ 32.)

(4)     "In conducting the purported foreclosure auction, [Equity] acted on its
        own and as agent for [FNMA]." (Compl. ¶ 33.)

(5)     "On its own and as agent for [FNMA, Equity] executed a purported
        substitute trustee's deed" and delivered that deed to FNMA, which
        "received it and caused it to be recorded in the public land records."
        (Compl. ¶ 34.)

Further, Coon only asserts causes of action against FNMA and seeks relief only from FNMA.

Coon also explicitly alleges that, after conducting the foreclosure action, Equity delivered the

deed to FNMA, which recorded it. *Contra Payne v. Bank of America, N.A.*, No. 3:09cv80, 2010

WL 546770, at *5 (W.D. Va. Feb. 11, 2010) (finding that the substitute trustee was not

fraudulently joined because "the Court must assume that [the substitute trustee] has not yet

recorded a deed conveying the property to any other entity, and thus, 'retains legal title to the

property until the deed is delivered[]'" (quoting *Sovran Bank v. Creative Indus.*, 425 S.E. 2d 504,

505 n.2 (Va. 1993))). Here, Coon states that Equity *did* deliver the deed to FNMA, which

recorded it.

As alleged, Equity delivered the deed to FNMA, meaning that Equity did not retain legal

title to the property. Even in this action seeking rescission of the foreclosure, Equity, a non-

titleholder, has no interest at stake. Regardless of the outcome of this action, Equity's interest cannot be affected in any foreseeable way. Equity therefore fits the quintessential definition of a nominal party. In sum, the nature of the actions Equity allegedly took, and the relief Coon seeks from Equity both indicate that Equity is fraudulently joined and constitutes a nominal party with no stake in the outcome of this litigation. *See Sherman*, 796 F. Supp. 2d at 760. The Court will dismiss Equity without prejudice.

### III.  The Court Will Grant in Part FNMA's Motion to Dismiss[11]

FNMA seeks dismissal of all three counts of Coon's Complaint under Rule 12(b)(6) for failure to state a claim. Even accepting all of Coon's well-pleaded factual allegations as true, viewing the Complaint in the light most favorable to Coon, and drawing all reasonable inferences in Coon's favor, she fails to state a claim against FNMA. The Court will grant the Motion to Dismiss. The Court will examine each count in turn.

### A.  Federal Rule of Civil Procedure 12(b)(6) Standard

In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Matkari*, 7 F.3d at 1134; *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim,

---

[11] FNMA asks the Court to dismiss Coon's Complaint with prejudice and deny her leave to amend. As discussed below, the Court will dismiss Coon's Complaint in its entirety, but, despite what appears to be an uphill battle in doing so adequately, will grant leave to amend Count II and Count III.

or the applicability of defenses." *Martin*, 980 F.2d at 952 (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

**B.     Count One:  The Breach of the Applicable Law Provision Claim**

Coon alleges in Count One that FNMA breached the Foreclosure Clause of the Deed of Trust because the foreclosure violated "the prohibition against dual track foreclosure" under 12 C.F.R. § 1024.41 and HAMP Supplemental Directive No. 09-01 (the "HAMP Directive"). (Compl. ¶¶ 13–42.) Coon seeks rescission of the foreclosure and compensatory damages for FNMA's purported breach.

FNMA argues that the Deed's so-called "applicable law" provision does not incorporate 12 C.F.R. § 1024.41 or the HAMP Directive, and therefore FNMA had no contractual duty to comply with those provisions. FNMA contends in the alternative that Coon does not allege facts showing that she constituted a "borrower" under those regulations, or submitted a complete "complete loss mitigation application," bringing her claims outside the purview of § 1024.41. (Mem. Supp. Mot. Dismiss 10–13, ECF No. 4.) Finally, FNMA asserts that any damages Coon alleges resulted from failure to timely pay the loan obligations, not from any breach by FNMA.

Coon posits that a decision from the Supreme Court of Virginia, *Parrish v. Fed. Nat'l Mortg. Ass'n*, 787 S.E. 2d 116 (Va. 2016), held that the "applicable law" provision of a deed of trust incorporated 12 C.F.R. § 1024.4, thus defeating FNMA's argument that it had no contractual duty to comply with that provision. (Resp. Mot. Dismiss 4, ECF No. 6.) Coon further asserts, without citation to legal authority, that FNMA "should be estopped" from arguing that Coon does not qualify as the "borrower" because it "treated her as the borrower." (*Id.* at 4.) Finally, Coon states that she "certainly pled" that FNMA's breach of the "applicable law" provision of the Deed of Trust caused her damages. (*Id.* at 6.)

Because the "applicable law" provision of the Deed of Trust does not incorporate 12 C.F.R. § 1024.41 or the HAMP Directive, FNMA had no contractual duty to comply with those provisions. As pled, Coon cannot state a claim for breach of the applicable law provision of the Deed of Trust. The Court will dismiss Count One **with prejudice.**

### 1.   The Deed of Trust's Foreclosure Clause

The Foreclosure Clause of the Deed of Trust provides, in relevant part, that if the borrower defaults on the loan, and

> the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by [the Deed of

Trust] without further demand and may invoke the power of sale and any other remedies permitted by *Applicable Law*. . . .

> If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by *Applicable Law*. . . . Lender or its designee may purchase the Property at any sale.

(Deed of Trust 13 (emphasis added).) The Deed of Trust defines "Applicable Law" as "all controlling applicable federal, state[,] and local statutes, regulations, ordinances[,] and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." (*Id.* at 3.) Coon asserts that the Applicable Law Provision incorporated 12 C.F.R. § 1024.41 and the HAMP Directive, and that FNMA's foreclosure violated those provisions. However, because § 1024.41 and the HAMP Directive were both promulgated *after* Stanley entered into the Deed of Trust, the Deed of Trust cannot be held to have incorporated those provisions into the definition of "applicable law." Moreover, because the HAMP Directive lacks the force of law, even had it been promulgated before the Deed of Trust was signed, it would not have been incorporated into the definition of applicable law.

### 2.    Legal Standard: A Contract's Incorporation of Governing Law

"A deed of trust is construed as a contract under Virginia law." *Mathews v. PHH Morg. Corp.*, 724 S.E. 2d 196, 200 (Va. 2012). And under ordinary principles of contract law, parties may incorporate regulatory provisions into a deed of trust "even when the regulation itself does not provide a private cause of action." *Wilkins v. Wells Fargo Bank, N.A.*, No. 2:15cv566, 2016 WL 6775692, at *3 (E.D. Va. Nov. 15, 2016) (citing *Squire v. Va. Hous. Dev. Auth.*, 758 S.E. 2d 55, 60 (Va. 2014)). In general, a lender's power to foreclose does not accrue until the conditions in a deed of trust have been satisfied, even if the borrower fell behind on his or her payments. *See Mathews*, 724 S.E. 2d at 200.

However, "[g]eneral precepts of contract law direct that, absent clear language to the contrary, courts should not interpret contracts to incorporate *future* changes to the law." *Condel v. Bank of America, N.A.*, No. 3:12cv212, 2012 WL 2673167, at *8 (E.D. Va. July 5, 2012). From this principle follows the rule that "'[c]ontracts are generally understood to incorporate only those laws which exist at the time of formation,' and therefore an after-enacted regulation could not have been incorporated through the 'all applicable law' clause in a deed of trust because it was not in existence at the time that the contract was made." *Reamer v. Deutsche Bank Nat'l Trust Co. Americas*, No. 3:15cv601, 2016 WL 1259557, at *5 (E.D. Va. Mar. 28, 2016) (quoting *Condel*, 2012 WL 2673167, at *6–8, and surveying caselaw). Thus, courts decline to "incorporate future regulations . . . into a contract unless the parties have unambiguously declared that to be their intent." *Combs v. U.S. Bank Nat'l Ass'n*, No. 1:17cv545, 2017 WL 2805494, at *5 (E.D. Va. June 28, 2017) (citing *Wilkins*, 2016 WL 6775692, at *3).

### 3. The Deed of Trust Did Not Incorporate 12 C.F.R. § 1024.41 or the HAMP Directive

Here, the Court cannot find that the Deed of Trust incorporated 12 C.F.R. § 1024.41 or the HAMP Directive. The Deed of Trust was executed on February 9, 2008. Section 1024.41 was originally promulgated on February 14, 2013, more than five years after the Deed of Trust was executed. *See Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X)*, 78 F.R. 10696 (Feb. 14, 2013); *see also Combs*, 2017 WL 2805494, at *5. The HAMP Directive was published on April 6, 2009, more than one year after the Deed of Trust was executed. Because both of the sources of "applicable law" that Coon alleges FNMA violated were enacted after the Deed of Trust was executed, neither was incorporated into the

Deed of Trust.[12] FNMA had no duty to comply with these provisions, and Coon cannot state a claim for their breach.[13] Nothing in the Deed of Trust unambiguously indicates the parties' intent to incorporate future regulations. The Court will dismiss Count One, the Breach of the Applicable Law Provision Count, with prejudice.[14]

## C.    Count Two: The Breach of the Notice Provision Claim

Coon asserts in Count Two that Seterus's statement that she should "ignore the cure notice sent in January 2016" constituted FNMA's withdrawal of that cure notice, and that "no holder of the note ever sent a proper cure notice in compliance with paragraph 22," rendering

---

[12] Moreover, the Court cannot find that the HAMP Directive falls within the Deed of Trust's definition of applicable law. The Deed of Trust defines applicable law as "all controlling applicable federal, state[,] and local statutes, regulations, ordinances[,] and administrative rules and orders (that have the effect of law)[,] as well as all applicable final, non-appealable judicial opinions." (Deed of Trust 3.) The HAMP Directive, however, "does not constitute a rule with the effect of law" because it "was not subject to the notice or comment requirements and simply provides guidance to servicers on the obligations under HAMP." *Menacho v. U.S. Bank Nat'l Assoc.*, 281 F. Supp. 3d 607, at *2 (E.D. Va. 2017) (footnote omitted). Thus, even if it had not been enacted after the Deed of Trust was executed, the HAMP Directive would fall outside the definition of applicable law.

[13] Even if the Deed of Trust incorporated 12 C.F.R. § 1024.41 via the applicable law phrase, and Coon sufficiently pled a claim for violation of that provision, rescission of the foreclosure is not an available remedy for that alleged breach. As courts within this district have recognized:

> [T]he exclusive remedies for a breach of § 1024.41 are contained in Section 6(f) of RESPA [(the Real Estate Settlement Procedures Act)], which provides for the recovery of (1) "actual damages to the borrower as a result of the failure [to comply with any provision of this section]; or (2) "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605. Rescission of a foreclosure is not a permissible remedy for a violation of RESPA.

*Combs*, 2017 WL 2805494, at *3. Even a properly pled violation of 12 C.F.R. § 1024.41 would not entitle Coon to rescission of the foreclosure.

[14] Both of the sources of "applicable law" that Coon alleges FNMA violated were enacted after the Deed of Trust was executed, and neither was incorporated into the Deed of Trust. Accordingly, any amendment of Count I would be futile.

FNMA's foreclosure wrongful (the "Breach of Required Notice Count"). (Compl. ¶¶ 43–47.) Coon seeks rescission of the foreclosure and compensatory damages for her claim that FNMA breached.

FNMA contends that Coon never alleges that it failed to comply with the notice requirement under paragraph 22 of the Deed of Trust, and Count Two must therefore fail. FNMA also argues that Coon alleges no damages resulting from its alleged failure to provide proper notice, further defeating Count Two. Coon responds, again without citing to legal authority, that, although FNMA "sent a 30-day cure notice," because it later "told Coon . . . to disregard it[,] . . . that did away with the cure notice." (Resp. Mot. Dismiss 4.)

Because, even reading her allegations favorably, Coon does not allege that FNMA failed to comply with the notice requirement of the Deed of Trust, she fails to state a claim that FNMA breached the notice provision of the Deed of Trust. The Court will Dismiss Count Two without prejudice.

### 1. The Notice Requirement of the Deed of Trust

The Deed of Trust provides, in relevant part:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in [the Deed of Trust] . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and[,] (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by [the Deed of Trust] and sale of the Property.

(Deed of Trust 13.) Under this provision, even if the borrower has breached, the lender may not accelerate a loan or conduct a foreclosure sale until after providing: (1) notice of the default; (2) notice of the action required to cure the default; (3) at least thirty days to cure the default; and, (4) notice that failure to timely cure the default may result in acceleration of the debt and sale of the property. In order to state a claim for a breach of this provision, the borrower would

have to allege that the lender breached one of these requirements, and the borrower suffered injury or harm as a result of that breach. *See Filak v. George*, 594 S.E. 2d 610, 614 (Va. 2004) ("The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.").

## 2. Coon Does Not Allege that FNMA Failed to Give Proper Notice

Coon never alleges that FNMA did not send notice of its intent to accelerate the loan, nor does she contend that any notice FNMA sent was deficient. Rather, she affirmatively asserts that "Seterus sent a 30-day cure notice to the estate of the late Stanley Coon" in mid-January 2016. (Compl. ¶ 18.) She further states that a Seterus representative informed her to "ignore the 30-day cure notice and not . . . make any further payments." (*Id.* ¶ 19.) She contends that this "statement by Seterus that she should ignore the cure notice sent in January 2016[] constituted withdrawal by [FNMA] of the cure notice sent in January 2016." (*Id.* ¶ 44.) Coon cites to no legal authority—in her Complaint or in briefing on the Motion to Dismiss—indicating that such a statement would negate an otherwise proper notice.

Taking all of Coon's factual allegations as true and viewing the Complaint in the light most favorable to Coon, she alleges no breach of the notice required under the Deed of Trust. The Court will therefore dismiss Count Two, the Breach of the Required Notice Count, without prejudice.[15]

---

[15] Although the Court finds it unlikely that any amendment could cure the defects of Count II given the allegations currently contained in Coon's Complaint, the Court cannot find, on the record before it, that amendment of Count II would be futile. The Court will therefore dismiss Count II without prejudice and grant Coon leave to amend.

## D.    Count Three:  The Breach of the Implied Covenant Claim

Coon avers in Count Three that the Deed of Trust contained an implied covenant "obligating the holder . . . to treat Coon with good faith and fair dealing," and that FNMA's actions in foreclosing on Coon's home "constituted breach of such covenant." (Compl. ¶¶ 48–54.) Coon seeks compensatory damages for FNMA's alleged breach.

FNMA asserts that no implied covenant of good faith and fair dealing exists in real estate contracts such as the Deed of Trust, and that Coon's claim in Count Three therefore fails as a matter of law.  FNMA also contends that, even if such an implied covenant existed in the Deed of Trust, a party does not breach implied duties when it exercises rights created under the contract.  Because, according to FNMA, it merely exercised its rights under the Deed of Trust by foreclosing on the home, no action for breach of the implied covenant of good faith and fair dealing can be maintained.  In response, Coon argues that FNMA breached the implied covenant by instructing her not to make payments.  According to Coon, under "Bourdelais, supra,[16] [sic] this was a breach of the implied covenant of good faith and fair dealing." (Resp. Mot. Dismiss 5, ECF No. 6.)

Because the Deed of Trust contained no implied covenant of good faith and fair dealing and, even if it did, Coon fails to allege that FNMA breached that implied covenant, Coon cannot state a claim for breach of the implied covenant of good faith and fair dealing.  The Court will dismiss Count Three without prejudice.

---

[16] Coon does not cite to a case with the name "*Bourdelais*" elsewhere in her brief.  The Eastern District of Virginia has issued two *Bourdelais* opinions: *Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10cv670, 2012 WL 5404084, at *4 (E.D. Va. Nov. 5, 2012) and *Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10cv670, 2011 WL 1306311, at *4 (E.D. Va. Apr. 1, 2011). This citation does not describe which case it seeks to invoke.

1. **Legal Standard: Breach of the Implied Covenant of Good Faith and Fair Dealing**

A claim for breach of the implied covenant of good faith and fair dealing under Virginia law[17] requires: "(1) a contractual relationship between the parties, and[,] (2) a breach of the implied covenant." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 451 (E.D. Va. 2009) (citations omitted). A breach of this duty, however, is not a separate tort, but rather "'gives rise only to a cause of action for breach of contract.'" *Smith v. Flagstar Bank, F.S.B.*, No. 3:14cv741, 2015 WL 1221270, at *6 (E.D. Va. Mar. 17, 2015) (quoting *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 385 (Va. 1996)).

The United States Court of Appeals for the Fourth Circuit has held that claims for a breach of the implied covenant of good faith and fair dealing under the Uniform Commercial Code (the "UCC") fail as a matter of law because "the UCC does not apply to transfers of real property." *Jones v. Fulton Bank, N.A.*, 565 F. App'x 251, 253 (4th Cir. 2014) (per curiam).

Courts within this district are split on the issue. Some have held that "Virginia law 'does not recognize an implied covenant of good faith and fair dealing in contracts outside of those governed by the [UCC], and the [UCC] expressly excludes the transfer of realty from its provisions.'" *Burke v. Nationstar Mortg., LLC*, No. 3:14cv837, 2015 WL 4571313, at *7 (E.D. Va. July 28, 2015) (quoting *Bagley v. Wells Fargo Bank, N.A.*, No. 3:12cv617, 2013 WL 350527, at *6 (E.D. Va. Jan. 29, 2013); *see also Bagley*, 2013 WL 350527, at *6 (same); *Harrison v. U.S. Bank Nat'l Ass'n*, No. 3:12cv224, 2012 WL 2366163, at * (E.D. Va. June 20,

---

[17] The Deed of Trust contains an express choice-of-law provision, which provides that "federal law and the law of the jurisdiction in which the Property is located" shall govern the contract terms. (Deed of Trust 11, ECF No. 4-2.) The Property is located in Fairfax, Virginia. This Court applies Virginia law to this claim under diversity jurisdiction, *see, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941), and "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances," *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Accordingly, Virginia law governs the terms of the Deed of Trust.

2012) ("Virginia, however, does not recognize an implied covenant of good faith and fair dealing in contracts outside of those governed by the [UCC], and the [UCC] 'expressly excludes the transfer of realty from its provisions.'" (quoting *Greenwood Assocs. Inc. v. Crestar Bank*, 448 S.E. 2d 399, 402 (Va. 1994)). Others have held that a plaintiff may "assert a legal claim for breach of the duty of good faith and fair dealing implied in the Note and Deed of Trust." *Bourdelais*, 2012 WL 5404084, at *4; *see also Cagle v. CitiMortgage, Inc.*, No. 3:13cv807, 2015 WL 2063990, at *8 (E.D. Va. May 1, 2015) ("Contracts governed by Virginia law, including those governing mortgages such as a deed of trust, contain an implied covenant of good faith and fair dealing."); *Covarrubias v. CitiMortgage, Inc.*, No. 3:14cv157, 2014 WL 6968035, at *3 (E.D. Va. Dec. 8, 2014) (vacated in non-relevant part by *Covarrubias v. CitiMortgage, Inc.*, 623 F. App'x 592 (4th Cir. 2015) (per curiam)) ("Contracts governed by Virginia law contain an implied covenant of good faith and fair dealing.").

Assuming without deciding that the implied covenant of good faith and fair dealing applies to the Deed of Trust, and assuming that Coon was a party to the Deed of Trust, Coon fails to state a claim for breach of that covenant because no breach occurred.

## 2. FNMA Did Not Breach Its Contractual Duties

The duty of good faith and fair dealing "prohibits a party from acting arbitrarily, unreasonably, and in bad faith" or "in such a manner as to prevent the other party from performing its obligations under the contract." *Bourdelais*, 2012 WL 5404084, at *5 (quoting *SunTrust Mortg., Inc. v. Mortgs. Unlimited, Inc.*, No. 3:11cv861, 2012 WL 1942056, at *3 (E.D. Va. May 29, 2012)). However, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 520 (Va. 1997). In other words, the implied

covenant "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Id.* (citations omitted).

Coon asserts that FNMA breached the implied covenant of good faith and fair dealing under the Deed of Trust by "the facts set forth in Counts One and Two." (Compl. ¶ 51.) Construing the Complaint liberally, Coon alleges that FNMA breached by: (1) Seterus's misleading conduct during the loan modification process; and, (2) conducting a foreclosure sale.

To the extent Coon relies on conduct during the loan modification process, that reason fails as a matter of law. Courts have unanimously concluded that the duty of good faith and fair dealing does not control the review and processing of loan modifications. *See, e.g.*, *Cagle*, 2015 WL 2063990, at *8; *Flagstar Bank*, 2015 WL 1221270, at *6; *Bourdelais*, 2012 WL 5404084, at *5 (collecting cases). Moreover, nothing in the Deed of Trust indicates that FNMA was obligated to modify the loan or do so in any particular manner. Absent express terms, invoking an abstract notion of "good faith" is insufficient to impose a contractual requirement to complete a loan modification. *Chance v. Wells Fargo Bank, N.A.*, No. 3:12cv320, 2012 WL 4461495, at *4 (E.D. Va. Sept. 25, 2012); *see also De Vera v. Bank of Am., N.A.*, No. 2:12cv17, 2012 WL 2400627, at *3 (E.D. Va. June 25, 2012).

To the extent Coon contends that conducting the foreclosure sale constituted a violation of the implied covenant, that reason fails because FNMA did not "breach implied duties when it exercise[d] its rights created under the contract" to foreclose based upon the failure to make mortgage payments. *Washington v. CitiMortg., Inc.*, No. 3:10cv887, 2011 WL 1871228, at *9 (E.D. Va. May 16, 2011) ("CitiMortgage had the explicit right to foreclose and sell the Washingtons' home to a third party when the Washingtons failed to make their mortgage payments."); *see also Covarrubias*, 2014 WL 6968035, at *3. Coon never alleges that the

payments on the loan were timely. Moreover, although she contends that Seterus instructed her "not to make any further payments" on the loan, (Compl. ¶ 19), she does not plead facts supporting a plausible inference that FNMA prevented her from performing her obligations under the contract; i.e., that FNMA prevented Coon or Stanley's Estate from making timely payments before any attempt at loan modification commenced. Coon alleges no facts about what occurred between July 2011 and 2015. *See Bourdelais*, 2012 WL 5404084, at \*5. Courts generally have allowed a good faith and fair dealing claim to survive under Rule 12(b)(6) only when an affirmative representation by the defendant caused the plaintiff to breach the note and deed of trust resulting in foreclosure.[18] The Complaint does not plausibly allege an affirmative inducement by FNMA that caused Coon to fail to meet any obligation she allegedly had under the mortgage.

Even assuming that a duty of good faith and fair dealing exists in the context of a deed of trust, and even assuming that a contractual relationship existed between Coon and FNMA, she nevertheless fails to state a claim for breach of that implied covenant. The Court will dismiss Count Three, the Breach of the Implied Covenant Count without prejudice.[19]

---

[18] *See Bourdelais*, 2012 WL 5404084, at \*5 ("Bourdelais alleges that Chase's incorrect representation of the eligibility requirements for the modification induced her to default and breach her obligation under the Note and Deed of Trust."); *Acuna v. Chase Home Fin., LLC*, No. 3:10cv905, 2011 WL 1883089, at \*6 (E.D. Va. May 17, 2011) (plaintiff alleges defendant breached the implied covenant of good faith and fair dealing by: "(1) inducing him to default by telling him his chances of receiving a loan modification would increase if he did so; (2) falsely assuring Acuna about the status of his modification; [and,] (3) falsely assuring Acuna the home would not be sold at the foreclosure sale.").

[19] The Court finds it unlikely that any amendment could cure the defects of Count III given Coon's lack of allegations that any conduct constituting a breach occurred. On the record before it, however, the Court cannot find that amendment of Count III would be futile. The Court will therefore dismiss Count III without prejudice and grant Coon leave to amend.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part the Motion to Dismiss. An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 8/15/18
Richmond, Virginia