UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
Spottswood W. Robinson III and Robert R. Mehrige Jr.
Federal Courthouse, 701 East Broad Street
Richmond. Virginia 23219

**MARYFRANCES A. COON,**

       Plaintiffs,

v.                  Civil Action No. 3:18-cv-108-MHL

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**

       Defendants.

### AMENDED COMPLAINT

Maryfrances A. Coon ("Coon"), by counsel, sets forth the following to the Court:

### I. Jurisdiction

1. This Court has jurisdiction in this case pursuant to 28 U.S. C. Section 1331 and 28 U.S.C. Section 1332 because the parties in interest are citizen of different states and the amount in controversy exceeds $75,000. Coon is a citizen of the Commonwealth of Virginia. The defendant, Federal National Mortgage Association is a citizen of the District of Columbia 12 U.S.C. Section 17`17(a)(2)(B) see also Sheppard v. BAC Home Loan Servicing, LP, 2012 WL204288 at * 3 (W.D. Va Jan 24, 2012) The amount in controversy exceeds $75,000.

### II. Parties

2. Coon is a natural person who resides in her home ("the home") located at 17901 Namozine Road, Amelia Court House, Virginia 23002.

3. Federal National Mortgage Association ("Fannie Mae") is a government-sponsored enterprise chartered by the United States Congress doing business in the Commonwealth of

Virginia as to mortgage loans.

## Venue

4. Venue is proper in this case because the complaint in this case seeks, inter alia, rescission of a foreclosure of the home, which is located in Amelia County, Virginia

### III.   Facts

5. Coon is the true owner of the equitable ownership interest in the home, subject to a deed of trust.

6. On February 9, 2008, Coon was the owner of the home, which she inherited from her parents, free of any mortgage lien.

7. On or about February 9, 2008, Coon executed a deed to convey ownership of the home to her late husband, Stanley G. Coon.

8. In connection with that transaction, the late Stanley Coon entered in to a mortgage loan (the "loan"), in which he was the borrower and Advanced Financial Services, Inc. ("Advanced Financial") was the lender.  The loan was evidenced by a note, signed by the late Stanley Coon, secured by a deed of trust, (the "deed of trust"), signed by him and Coon, recorded in the clerk's office of this Court (the "public land records") in Deed Book 0277, Page 7516, Instrument No. 080000374.    The deed of trust appointed Joseph V Buonassissi and John Moffett, Jr. ("the original trustees") as trustees on the deed of trust, which was a lien on the home. .

9. The deed of trust identified "Borrower" as both of the Coons.

10. The late Stanley Coon died on July 11, 2011.  As a result of his death, Coon became sole owner of the home.

11. Advanced Financial assigned the note.  Fannie Mae claimed status as owner of the note.

12. Fannie Mae retained Seterus, Inc. ("Seterus") as servicer on the loan.

13. Accompanying this amended complaint marked "Exhibit A" is a copy of the deed of trust.

14. The deed of trust defined "Borrower" to include Coon and Stanley Coon, but stated in Paragraph 13 that Coon, because she signed the deed of trust but not the note, was not personally liable to make payments.

15. The deed of trust, at paragraph 22, provided, in pertinent part, in paragraph 22, as follows:

> **Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .**
> **. . . .**
> **The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date of notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.**
> **. . . .**
> **If the default is not cured on or before the date specified in the notice, Lender at its option    may require immediate payment in full of all sums secured by this Security Instrument    without further demand and may invoke the power of sale and any other remedies    permitted by Applicable Law.…**
> **…..Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks I a newspaper having general circulation in the    county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the property….**
> **….**
>
> **Count One: Suit for Rescission of Foreclosure and Trustee's Deed and for Damages on Grounds of Dual Foreclosure.**

16. In 2015, Seterus sent correspondence to "the Estate of Stanly Coon" which stated congratulations and promised a loan modification based on qualification for the same and based on acceptance by telephone by a specified date and timely payment of three trial payments.

17. Coon called Seterus within the deadline stated in such correspondence identified herself as Stanley Coon's widow, and accepted the trial payment and loan modification offer.

18. Coon made the three trial payments on time.

19. While she was making the payments on time, Seterus, on behalf of Fannie Mae, executed a document which removed the original trustees and appointed Equity Trustees as substitute trustees.

20. In 2016, Seterus sent back the third payment, stating that Coon was required to assume the loan.

21. On January 19, 2016, although Seterus was on notice that Stanley Coon was deceased, it sent a letter addressed to "Stanley G. Coon" at the home. A copy of that letter accompanies this amended complaint marked "Exhibit B."

22. On the same day, January 19, 2016, Seterus sent a letter addressed to Coon at the home. A copy of that letter accompanies this complaint marked "Exhibit C"

23. Both Exhibit B and Exhibit C gave a deadline of February 23, 2018 to bring the loan current and indicated that failure to do so could result in acceleration of the note and foreclosure under the deed of trust.

24. When Seterus sent Exhibit C to Coon, there was an ambiguity as to the lender's obligation as to the requirement to send a cure notice to Coon. That ambiguity resulted from the fact that (a) Coon was not personally liable on the note and the deed of trust stated at paragraph 13 that she was not rendered personally liable to make payments; (b) the deed of trust nevertheless defined "Borrower" to include Coon; and (c) paragraph 22 of the deed of trust stated that the lender was required to send "Borrower" a cure notice following "Borrower's breach" of any agreement in the deed of trust.

25. Exhibit C resolved this ambiguity in favor of sending a cure notice to Coon/

26. Exhibit C stated there was a default in payments. It did not specifically say that Coon was personally liable to pay the arrearage (she was not), but did state that if the loan was not

4

brought current by February 23, 2016, the lender could accelerate the note without notice and could proceed to foreclosure of the home. Exhibit C also stated that the lender demanded that Coon bring the loan current.

27. Under Virginia common law, the lender and, *inter alia*, Coon assumed upon execution of the deed of trust, an implied covenant of good faith and fair dealing towards each other, (as is so of every contract) that neither the borrowers nor the lender do anything to have the effect of destroying or injuring the opposing party of the benefit of the other party's rights and benefits under the deed of trust.  Upon accepting assignment of the ownership of the note, Fannie Mae assumed towards the grantors of the deed of trust, including Coon, the duty of the said implied covenant of good faith and fair dealing.

28.  Virginia law, as construed by this Court, had consistently held that a lender breaches such implied covenant of good faith and fair dealing (imposed by the common law) by telling a borrower not to make payments due on the loan if the failure to make payments will have the effect of destroying or injuring the borrower of the benefit of the borrower's rights and benefits under the deed of trust. E.g. *Bourdelais v. JPMorgan Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 158508 (E.D. Va. Nov. 5, 2012).

29. Although Coon was not personally liable on the note, she was a party to the deed of trust. Therefore, the lender had an obligation not to persuade her against taking action to comply with the demand in Exhibit C that she bring the loan current in order to avoid loss of her equity in the home.

30. Coon received either Exhibit B or Exhibit C or both.

31. Coon called Seterus and asked why Seterus had not proceeded according to its promise to allow trial payments towards a loan modification.  Seretus told Coon she was required to complete certain paperwork towards assumption of the loan.

32. In the discussion recited in paragraph 31 of this amended complaint, Seterus, acting as agent for Fannie Mae and on behalf of Fannie Mae told Coon to ignore the 30-day cure notice and not to make any further payments until the application process involving the paperwork for assumption of the loan was completed.

33. Although Coon had received notification in writing (Exhibit B and/or Exhibit C) that the loan had to be brought current to avoid acceleration of the note and foreclosure under the deed of trust, Coon reasonably accepted as *bona fide* the direction by Seterus, on behalf of Fannie Mae, that she should ignore the 30-day cure notice and not make payments.

34. In instructing Coon to ignore the cure notice and not to make payments, Fannie Mae, through Seterus, breached the common law implied covenant of good faith and fair dealing because, although Coon was not liable on the note (and the borrower in the *Bordelais* case was liable on the mortgage note in that case) the basic principle of the *Bourdelais* decision should be deemed as applied to Coon's rights to be free of foreclosure of her home if a cure notice were met by bringing the loan current within the deadline of the cure notice.

35. Reasonably relying on the instruction of Seterus to ignore the cure notice and to make no payments while a loan modification application was in process, Coon disregarded the cure notice of which she had been made aware of through Exhibit B and/or Exhibit C and did not bring the loan current within the deadline of February 23, 2016 to do so.

36. Had Fannie Mae, through Seterus, not instructed Coon to disregard the cure notice and instructed her to make no payments during the loan application process, Coon would have acted to have the loan brought current to avoid foreclosure and loss of her equity.

37. Coon filled out the paperwork she was instructed by Seterus to fill out and sent the same to Seterus.

38. Seterus asked for more paperwork.

39. Coon sent in the requested additional paperwork.

40. At least three times, Seterus told Coon that Seterus had everything needed to complete the process for assumption and for the loan modification.

41. After telling Coon that she had sent everything necessary for assumption of the loan, Seterus repeatedly told Coon that Seterus needed more. Each time Coon filled out the requested additional paperwork and sent it in and was advised by Seterus that Seterus had everything it needed, and then the process was renewed in which Seterus demanded more paperwork, which Coon completed and sent in, followed by Seterus assuring her it had all that was needed, followed by Seterus demanding more, which Coon provided, and so on.

42. Notwithstanding the facts set forth above, Seterus, on behalf of Fannie Mae, instructed Equity Trustees to foreclose on the home. Equity Trustees advertised a foreclosure of the home for March 29, 2017.

43. Coon became aware of the schedule for a March 29, 2017 foreclosure about a week before that date.

44. Coon called Seterus and asked why the home had been scheduled for foreclosure. Seterus responded that Seterus didn't have all of the paperwork it needed (although it had repeatedly said before that that it had all of the paperwork it needed).

45. Coon asked what additional paperwork she should send.

46. Seterus told Coon she was required to be appointed as administrator on Stanley Coon's estate.

47. Coon had previously sent Seterus a small estate affidavit, after which Seterus had told Cook it had all that was needed. However, as set forth in paragraph 46 of this amended complaint, about a week before the foreclosure Seterus, for the first time, told Coon she needed to be appointed as administrator of her husband's estate.

48. On March 28, 2017 Coon faxed Seterus proof of her appointment as administrator of the estate of Stanley Coon.

49. Nevertheless, Seterus instructed Equity Trustees to proceed with foreclosure of the home. As a result, on March 29, 2017, Equity Trustees conducted a purported foreclosure sale at which Fannie Mae, as holder of the note, made the high bid of $166,858.56, which was significantly less than the value of the home, assessed for tax purposes at $212,400.

50. In conducting the purported foreclosure auction, Equity Trustees acted on its own and as agent for Fannie Mae.

51. On its own and as agent for Fannie Mae, Equity Trustees executed a purported substitute trustee's deed, which Equity Trustees delivered to Fannie Mae, which received it and caused it to be recorded in the public land records as Instrument No. 201700660 on May 2, 2017.

52. Fannie Mae advertised an Internet Auction to sell the home, advising potential buyers they are not to come on the property or speak to the occupants. Fannie Mae, through agency, advertised the Internet Auction that way in hopes of preventing any buyer from receiving actual particular notice of the details averred herein above in this Count of this complaint. The Internet auction was announced to be completed at 4 p.m. on June 7, 2017 but was suspended when Coon filed the original lawsuit in this case.

53. Fannie Mae, through agency, posted a notice on the door of the home asserting that Coon and any other occupants had 30 days to vacate the home.

54. In acting through agency for the advertisement of the home for foreclosure and in acting through Equity Trustees for conduct of the purported foreclosure and execution and conveyance of the purported substitute trustee's deed and in recording the purported substitute trustee's deed, and in sending notice to Coon to vacate her home and in its effort to conduct an Internet auction of the home, Fannie Mae breached its implied covenant towards

Coon under common law of good faith and fair dealing, for the reasons set forth above.

55. Fannie Mae breached the implied covenant of good faith and fair dealing under the ambit of the decision by this Court in *Bourdelais* (although the facts of this case are not exactly the same – for the reasons set forth herein above) by acting to dissuade Coon from bringing the loan current, and perpetuated such breach of the implied covenant of good faith and fair dealing by stringing her along until shortly before the foreclosure, as a result of which she lost ownership of the home and her substantial equity in it and sustained other damages set forth in this amended complaint.

56. As a proximate result of Fannie Mae's breaches of the implied covenant of good faith and fair dealing, as recited herein above in this amended complaint, Coon sustained the following damages:

   A. She was deprived of record title to the home.

   B. She was deprived of the quiet enjoyment of the home.

   C. She lost considerable equity in the home.

   D. She lost the interest on her loss of equity. . 

57. As a proximate result of Fannie Mae's breaches of the said implied covenant of good faith and fair dealing, as recited herein above in this amended complaint, Coon, for an indefinite time in the future, will continue to sustain the damages sustained in paragraph 56 (A)(B) of this amended complaint and will continue to loss interest on her loss of equity in the home.

58. As a result of the facts set forth herein above in this amended complaint, Coon is entitled to entry of a judgment in her favor against Fannie Mae for compensatory damages.

## IV. Call for Trial by Jury

59. Coon calls for trial by jury.

## V. Conclusion

WHEREFORE, Coon prays that the Court enter a judgment in favor of Coon against Fannie Mae for compensatory damages.

                                                         Respectfully submitted,

                                                         **MARYFRANCES A. COON,**

                                                         By /s/ Henry McLaughlin
                                                              Counsel

Henry W. McLaughlin (VSB No. 07105)
Law Office of Henry McLaughlin, P.C.
Eighth and Main Building
707 East Main Street, Suite 1050
Richmond, Virginia 23219
(804) 205-9020; fax (877) 575-0245
henry@mclaughlinvalaw.com
*Counsel for Maryfrancis A. Coon*

## CERTIFICATE

I, Henry W. McLaughlin, of counsel for Maryfrancis A. Coon, certify that on August 29, 2018, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following:

                      Ryan Van Patten Dougherty
                      McGuireWoods LLP (Norfolk)
                      101 W Main St
                      Suite 9000
                      Norfolk, VA 23510-1655
                      rdougherty@mcguirewoods.com

                                                      /s/ Henry W. McLaughlin
                                                      Of Counsel

                      Henry W. McLaughlin (VSB No. 07105)
                      The Law Office of Henry McLaughlin, P.C.
                      707 East Main Street, Suite 1050
                      Richmond, Virginia 23219
                      (804) 205-9020; fax (877) 575-0245
                      henry@mclaughlinvalaw.com
                      *Counsel for Randolph J. Morrison*